to welcome our colleague, Judge Hamilton, via the wonders of modern technology, and I would advise the attorneys that when Judge Hamilton has a question or a comment, he will be raising his hand, so when you see that hand go up, if you will stop your argument so he can address you. So that said, Mr. Jacobs, we're glad to hear from you on our first case, Route 231, LLC v. Commissioner of the Internal Revenue. May it please the Court, my name is Tim Jacobs, Huntington Williams, representing the taxpayer. If I may, I would like to reserve five minutes for rebuttal. There are two issues in this case, both tax issues. The first issue is the disguised sale issue, and the second issue is a proper tax year issue. Either issue is determinative if the Court holds in favor of Route 231 on either issue. In the tax court, the tax court held that the Route 231 real estate partnership engaged in a disguised sale of Virginia land preservation tax credits with one of its partners, Virginia Conservation. The tax court concluded that the facts of that partnership and that transaction were squarely on point with this Court's decision in Virginia Historic, that it was a simple purchase transaction with Virginia Conservation. Counsel, let me make sure that I've caught the thrust of your argument on brief. I understand that you don't challenge any of the regulations under 707. That is true, Your Honor. And therefore, there is a presumption of disguised sale because the transactions occurred within two years, and it's your burden to rebut the presumption. If I may respond, we don't get to the presumption. There are a number of threshold issues. Let's assume that we do get to the presumption. Well, the facts and circumstances... If we assume that the presumption applies, the tax court went through a long list of different items that established facts in its view to show the disguised sale. As I understand your brief, you don't really challenge any of those findings. Your argument comes down to the regs don't apply to legitimate partnership. Well, I think there are a number of different issues before you get to the presumption. One is the statute itself says that it's looking at whether the partner is acting in a capacity other than as a partner. And what we submit here is that Virginia Conservation's $3.8 million capital contribution established an equity stake in the partnership. That's what made them a bona fide partner. And so the same transaction... Well, that may be true for Virginia state law purposes, but why would that have any effect on the federal tax consequences? Because the federal statute says other than in a capacity as a partner. I think it's an overriding consideration of both the statutory provision under Section 707 and the disguised sale regulations. That's what you're looking for. That's the overriding consideration. Well, the folks in the predecessor case, they were acting as partners. The facts were a little bit different. That was a completely different partnership from this partnership, I would submit. And the reason for that, and I think the Virginia Historic Court was very clear, that looking to the legislative history, you had a transitory partnership. Those investors there, which were 282 investors, put in $7 million. They got the credits, and they were immediately bought out for $7,000. That is a different case from what we have here, a different set of circumstances, a different set of facts, where Virginia Conservation puts in $3.8 million, gets a capital account. That is an equity under federal tax law principles. That is treated under the regulation as an allocation of tax credits and not as a distribution of property that reduces the capital account. They still have that capital account. They are still partners in this partnership to this very day. But how does that figure into the discussed sale rules? Well, I think it's, first of all, there are a couple of different levels. One is, again, the statute says, other than any capacity of partner. Well, for federal tax purposes, what made them a partner was actually that same capital contribution, that same investment. At the secondary level, there is a transfer of property. This wasn't a transfer of property under the federal tax regulations. It was treated as an allocation of tax credits. At the third level is the entrepreneurial risk issue. That's how the partnership is treated. Well, that's how they treated it. They actually accorded this partner, Virginia Conservation, a $3.8 million capital account that they still have. That is an equity contribution. That is an equity established in that partnership. That is very different from the transitory partnership in Virginia's story. Well, they have a capital account that's highly disproportionate to their share of profits and losses. So they are a partner in the LLC, a member of the LLC, but their share is only 1%, I believe. Their share of partnership profits and losses is 1%. Their share of distributions of cash flow is 1%. That's correct. But if you take into account that capital account, they got $3.8 million, and under the federal tax regulations under Section 704, they actually have a priority to liquidating distributions, that equity that's in the partnership. This partnership was $24 million in debt. When the $3.8 million comes in, it was used in this partnership. It didn't go out. It stayed in the partnership. It created an equity. And that equity, they have a priority to that equity. This is Virginia conservation. And the only way they could be bought out, and that could be cut out, and it still is true to this day, is that they had to be bought out at fair market value. And I would submit that that is a touchstone in every single partnership case at the federal level. That's not a state issue. That's a federal issue. And that's fair market value participation at an entrepreneurial level in the partnership. They are participating in an enterprise. They have a $3.8 million equity. And that runs through multiple levels of the SkySail rules. This particular partnership, unlike the partnership in Virginia's story, is an operating, healthy, ongoing enterprise. What difference does that make for 707 purposes? Because this particular partner has an interest in that partnership. Completely different. This is the 1% interest you're referring to in the partnership. They have 1% in the allocations and the distributions, but in terms of their capital count, they have a much more significant and, in fact, priority interest. It's a very different situation. How does that differ from having a priority interest as opposed to simply 1% interest where the other two partners have 49.5% apiece? Well, the fact is that if this partnership is liquidated, they get $3.8 million. The other partners don't get anything. And if that's all that's left, they have the first priority return to that $3.8 million. And that's the same $3.8 million they put into this partnership. And with respect to the presumption, they put their capital contribution in, got an equity, and that equity still exists to this very day. It's beyond the two-year period. You don't dispute that the presumption would apply. Well, I'm saying if you get to that stage, even at that point, you have an equity investment that stayed in this partnership for two years. The SkySail rules are looking for avoidance transactions. This is not an avoidance transaction. This is a clean partner-partnership relationship. There's an equity contribution. Your brief seems to take the point that if the taxpayer establishes a partnership, as you described, that in that circumstance, the SkySail rules simply don't apply in the first instance. That's correct. And that's under Section 707. That doesn't seem to be what the statute says. There's nothing in 707 that says that. The statute says, other than in a capacity as a partner. And they were acting in their capacity as a partner. I think it's indisputable that they establish an equity. Well, isn't that going to be a dispute in every one of these cases, whether they acted in their capacity as a partner? Isn't that the main issue? Well, I think that's, in fact, that's what the government argued to the Third Circuit in the context of bona fide partner. They said that they looked at this court and said it established a guidepost that the SkySail rules are not mutually exclusive from the bona fide partner issue. That's what you're trying to establish here. You're trying to see this is not a nominal partnership. The IRS doesn't contest that Virginia Conservation is a bona fide partner. They don't. That's right. That's exactly right. And it's the same transaction. How can you have the same transaction establish that you're a bona fide partner and then the statute says, other than in a capacity as a partner? That doesn't make any sense. Is it typical for a capital account that the Virginia Conservation here gave 53 cents on the dollar for these tax credits? I mean, that's directly tied to the credits? Well, I would submit that. Not to the capital account? Sorry. I would submit that that's how tax credit transaction at the federal level and the state level are done across the board. In fact, the IRS even talks about so-called pricing. That's not an operative. But the question is, that amount seems to be tied to the credits. It doesn't seem to be a desire to set up a capital account. Well, it did. But it, in fact, established a capital account. It did, in fact, establish the 3.8 in our capital account, and that's an equity contribution. It's very clear, and they still have it. If I may, I'd like to finish my time with the timing issue, the tax year issue. Even if there was a disguise sale, and there was, the IRS picked the wrong tax year for the adjustment. And the key issue there is the escrow conditions proceeding that the parties set up for their transaction. And one of those escrow conditions proceeding was the Virginia Department of Taxation Registration and Review process. That was the final condition proceeding consistent with the testimony in the case, consistent with the record, consistent with all the correspondence and e-mails, and there is no dispute that that condition proceeding was not satisfied until March 2006, and only at that point in time, according to the e-mails, did they receive the tax credits, did the transaction close, did Route 231 have a right to income. Only at that point, that final condition proceeding. What test should the court use to determine whether this sale occurred in 2005 or 2006? The regulation provides the answer for that, and that's 1.707-382, which says, effectively, that... Which one do you call it? You call it the benefits test, or is it the other test? Which test is it? It's, first of all, ownership. It's when Virginia Conservation became the owner, I guess in this case, of the tax credits under federal tax law principles. And that, indisputably, is the benefits and burdens test that has been applied consistently by the federal courts and by this court. It would strike you as odd, though, that every other party that touched this transaction treated it as complete in 2005. I don't believe they did. And, first of all, those are transactions involving different taxpayers, different transactions. In fact, the IRS... All that, we understand all that, Counsel, but it seems like you're the odd man out in this. Well, even in page 71 of the government's brief, the government says that the key transaction, because they're running away from the tax court's evidence and findings, they say the key transaction is the Route 231 and the Virginia Conservation transaction. And that's the transaction that matters for purposes of the Disguised Sale Regulation. That is the sale, the purported sale, that we have to assess the timing for. And the benefits and burdens of ownership, the question is when did that shift from Route 231 to Virginia Conservation? And the answer to that question is it's tied up in these escrow conditions, which I believe most practitioners in this circuit understand, that the escrow doesn't close, the sale doesn't close, and the income doesn't come out, and the gains don't accrue until the escrow conditions preceding are met. What the tax court did here, and this wasn't even the IRS's argument down below, the tax court dug into the escrow agreements and picked out two events. It focused on those two events, and it ignored all the testimony. It didn't even discuss the testimony. It's actually in a footnote at the end where it summarily dismisses the escrow conditions. There was a list of escrow conditions that included the title report. Well, everybody knows that a sale doesn't close without a title report. The Virginia Department of Taxation registration process was not concluded, and there's e-mails where the Virginia Conservation Attorneys is saying, where are the credits that fix the amount of the credits? And this is in March 2006. In January of 2006, yes, sir? I have a question. Looking at this record, under the accrual method of accounting, the right to the $3.816 million occurred in 2005. Your Honor, I would submit that that's the all events test under 451. The question is, is when did all the events occur that fixed the right to the income? And in this case, the income. I just gave you the answer to that. Under the accrual method of accounting, it occurred in 2005. No, Your Honor, I would say it's 2006. The escrow conditions proceed, and it was March of 2006. When the final condition proceeding, which was the receipt of the tax credit registration numbers, that's when it was received. That is March 2006, undisputed. It was actually stipulated in the court tax court record. That was the final condition proceeding. I would say this as well. What the tax court determined, they ignored all of the discussions in January 2006 about this escrow. There were discussions, arguments about the escrow. If Virginia Conservation or Route 231 had a right to that income in 2005, why are the parties still arguing 2006? Counsel, they had a right to the interest. The interest wasn't decided until 2006. There wasn't any interest in 2005. But the question of the right would have preceded that. The receipt was still subject to the conditions proceeding, which they were still talking about in January 2006. It was not a closed transaction. There was no fixed right to income, Your Honor. That was the last of it in March 2006. Thank you very much. You've got some rebuttal time.  May it please the Court, Mr. Jacobs is begging the question when he continually emphasizes here in his briefs that Route 231 was a valid partnership and Virginia Fund was a valid partner. I would remind the Court that in Virginia Historic, the tax court found that the partnerships there were valid partnerships and that the investor partners were bona fide partners. On appeal, this Court left those findings undisturbed. It expressly assumed for purposes of its decision that the tax court had correctly found that there were valid partnerships and that the partners had a bona fide partnership interest. Nevertheless, this Court reversed the tax court's decision under the disguised sales rules, recognizing that those rules apply irrespective of whether the partnership is valid or whether the partner otherwise is a valid partner. That's the whole purpose of those rules is to focus in on a particular transaction between a partner and a partnership to determine whether in that particular transaction the partner and the partnership are not acting in the capacity of partner and partnership. Mr. Jacobs said we shouldn't get to the issue of the side disguised sales. Well, that would render the disguised sales rules a nullity and be completely contrary to the purpose for which they were enacted. If you look at the legislative history, Congress said we're passing these rules because the partnerships are being used to disguise taxable income as non-taxable capital contributions. Well, I want to make sure you address the points he made because it seemed to me I recall him saying something to the effect that there's $3.6 million there and they are active participants in this. And the 53 cent on the dollar doesn't really mean much. It's kind of what happens in these cases. That doesn't mean it's for the credits. So it's a capital count. Your Honor, in form they made a capital contribution of $3.8 million. But the issue under the disguised sales is to look at the factors, including the but-for test and the other test that the tax court went over in detail. So if we look at these tests that the coach... But he was so adamant on that. Judge Agee really pressed to that point, trying to get to this presumption and disguised sale, and I can't believe he just made that argument and it's not worth at least commenting to some degree on what he's talking about. I don't understand his argument, Your Honor, because all these cases, including Virginia Historic, in form a partner made a capital contribution. The question under the disguised sales rules was, in substance, that capital contribution, the proceeds from a sale of property. Now, if you look at what... And the presumption applies here by its terms because if it says that if the transfer of money to the partnership and the return transfer of property to the partner takes place within two years, the transaction is presumed to be a disguised sale that can be only overturned if there's clear evidence to the contrary. This court said in Virginia Historic that's a high burden. They haven't come close to it. If you go over the factors, first of all, you have the but-for test. But you did hear him say that that case doesn't even apply. It's not really that applicable to the situation. He says it because it's on point and he has to say it or he loses, but it doesn't make it so. If you look at the factors that this court relied on in Virginia Historic and the factors that the tax court relied on here, they're the same. The first being the amount of the capital contribution was a direct function of the price of the credits that were being acquired. In this case, $0.53 for every dollar of credit. They got $7,200,000 worth of credits, so their capital contribution was $3.8 million and changed the $0.53. Secondly, the credits that they purchased were not dependent on the entrepreneurial success of Route 231. It didn't matter whether Route 231 made any money or lost money on its business operations. The fund, Virginia Fund, had an absolute right to those credits because that was the deal of the parties, and had they not provided the credit, they could have been sued for breach of contract. In fact, as was the case in Virginia Historic, the so-called capital contribution was fully refundable to the extent Virginia ultimately didn't allow the credits. In a normal capital contribution, if the business fails, you lose your capital contribution. In this case, it didn't matter if the business failed. They were entitled to these credits because that's what they bought, and if they didn't get the credits because Virginia disallowed them, then they got their money back. In addition, the amount of the credits was totally disproportionate to their 1% partnership interest, which is another factor that this court relied on in Virginia Historic. So you're walking us right down these 707-3 factors that are there, and your point is that those factors all lead to the conclusion this was a sky safe. And that's what the statute requires, and that's what the tax court did here, and that's what this court did in Virginia Historic. And I would again emphasize that this court did not determine in Virginia Historic that the partnerships there were shams or that the partners were not bona fide partners. The court accepted for purposes of its decision that the tax court had correctly found that they were valid partnerships. So it gets Route 231 nowhere to say it was a legitimate partnership or that the fund was a legitimate partner. It had a 1% interest, but the credits had no relationship to this 1% interest. The credits were strictly a function of the amount of money that they paid and the price, which was 53 cents a credit. Of course, this means nothing if we decide this all occurred in 2006, and that's the taxable year here. So how is it, and you heard Judge Hamilton's question regarding the accrual method, why is it that your opponent seems to indicate that's not a method by which we would determine this occurred in 2005? Well, Judge Hamilton was right. The first test on the regs is when it says when you determine the sale occurred is when ownership of the credits, in this case, passed to the fund. Now, my opponent says this didn't happen in 2006 when Virginia issued these acknowledgment letters and the escrow was released. Well, that position is, first of all, contrary to the Virginia law and contrary to all the documentary evidence. If we start with the Route 231's partnership return for 2005, they reported on that and the associated K-1 that Virginia Fund had made its capital contribution during 2005. Notwithstanding the escrow agreement, they ignored it. They filled out land preservation credit acknowledgment forms dated December 30, 2005, in which they indicated that the credits, $7,200,000, had been allocated to Virginia Fund. So, do those two documents together constitute an admission on behalf of Virginia Fund? Well, I would say they do when they confirm it. And also, when Virginia Tax Department issued the credit acknowledgment letters, which was acknowledging these LPC forms that Route 231 had sent to them, it said in those letters that these credits were effective for the year 2005. Now, my opponent says in their brief that Virginia law has a relation back principle, that the credits were earned in 2006, but they relate back to 2005. That is directly contrary to Virginia law, as expressed by the Virginia Tax Commissioner in two rulings in February 2003 and March of 2003, which are in the joint appendix. One of those rulings was referenced by the tax court in its opinion. And in those rulings, the Virginia Tax Commissioner said that a transferee of credits, like the fund, can claim the credit in the year in which it acquired the credits, and it cannot use the credits in any prior year. So if, as my opponent says now, Virginia Fund didn't acquire the credits to 2006, it couldn't have used them in 2005 or transferred them to its members in 2005, but it's undisputed that it did. Virginia even said they had the credits for 2005, and they did transfer it to their members in 2005. I would also emphasize that the essence of this deal was that these credits would be earned by December 31, 2005, and be available to Virginia Fund for that year. That is in the first amended and restated operating agreement, where there's an express warranty that the credits would be earned by December 2005. And then the parties on January 1, 2006, well before the escrow was released and well before Virginia issued the credit acknowledgment letters, this restated one dated January 1, 2006, says that Virginia Fund has made a capital contribution equal to 53 cents for every dollar of credit allocated to it. It says credits have been allocated of $7,200,000 to Virginia Fund, and it says the credits were earned by December 31, 2005. So as Judge Hamilton said, all events occurred. The ownership of the credits were vested in Virginia Fund in 2005. That's the reason why it was entitled to use them for 2005 or transfer them to its members who could then use them or sell them. Had the credits not been acquired until 2006, none of that could have taken place, because as the Virginia Tax Commissioner ruled, you can't use them in a year prior to the year in which you acquire them. I don't think I have anything else to say unless the Court has questions. How do you define ministerial? Well, I don't think there's a specific definition, but I think what I would say was basically it was pro forma. If you look at the escrow agreement, the important point was that the conveyances, the charitable conveyances had to be recorded by December 31, 2005, and Virginia Fund had to be admitted by December 31, 2005, or the escrow said the funds had to be immediately returned to Virginia Fund. Those events took place. Now, after that, the credits were earned because the conveyances were made. After that, it was pro forma. You send this form to Virginia. They just check your paperwork, and they send you a letter not issuing the credits. They changed the law starting in 2007 where you don't have the credits until Virginia actually issues them. But during the years 2005, Virginia just acknowledged the form that you sent in which you reported that you made a donation and that you allocated the credits. So the actual acknowledgment letter was pro forma. They don't go out and reappraise the land. Now, they always could do that, you know, actually looking at the value. But in that case, Virginia Fund would get its money back if the credits were disallowed, which just further confirms that the deal was done, and if it was undone, they're going to get their money back. But the essence of this agreement and the warranties made to the fund was that this would all be done in 2005 so they could use them or transfer them to their members for 2005. And Virginia, in its letter, said their credits were effective for 2005, which means they had to be acquired in 2005 by Virginia because if they had been acquired in 2006, they could only be used in 2006 and forward. Well, you say that review was ministerial, but does it matter that there may have been substantial uncertainty by the parties as to what the results of that review would be until they actually got it? Well, I don't think so, Your Honor, because I don't think there was any uncertainties that the credits were earned when the donations were made, and they were not reviewing the evaluation on these acknowledgments. If you look at the letter that Virginia said, it says acknowledgment of your form LPC is hereby acknowledged, and it just says here's your credit number and the effective tax year is 2005 and the credits expire in 2010. It's a pro forma acknowledgment. As the Commissioner said, prior to the change in law, Virginia didn't issue the credits, it just acknowledged what the taxpayers sent in, and that changed in 2007. They had to actually issue the credits, and you couldn't claim them until they did, but that wasn't the situation here. The tax court went through a detailed examination of all the facts, and I'd also say that this Court should apply the duty of consistency. The taxpayer, Route 231, is clearly trying to whipsaw the United States by now claiming there was no capital contribution until 2006. It said in its petition in the tax court that the capital contribution was made in 2005, and that's what it reported on its returns for 2005. That's what the second restated partnership agreement said, that as of January 1 they had already made their capital contribution. Everything they're saying now in this desperate attempt to avoid Virginia historic is just an attempt to whipsaw the IRS, and it's contrary to all their documents, including the LPC forms that they sent to Virginia, which were dated December 30, 2005, and said the credits had been allocated. So I only have one other question, and that is this review, it seems to me Virginia could have disallowed some of the credits, and if they did that, then why is that not beyond ministerial and not a condition proceeding? Well, I don't know the Virginia statute of limitations, but they probably had three years, and then you reach the situation that even if everything took place in 2005, you would say, well, Virginia had three years to look this over and disallow it, and we're not going to have a sale until the statute of limitations expires. That just doesn't make any sense, and it doesn't work that way. If the same events had occurred, but they were after the change in the Virginia statute in 2007, so you were going between two years after that date, would the result here be different? Yes, Your Honor, because after January 2007, Virginia has to issue the credits, and you can't claim it for any year until they issue the credits. So if we had that law and Virginia actually issued the credits in 2006, then the first year anybody could use the credits would be 2006. But, of course, in this case, Virginia said in its acknowledgement letter, which was dated March of 2006, that the effective year was 2005, because they were just acknowledging credits that had already been earned by the end of 2005. It would be totally different, and had we had a situation where the law required the issuance of credits and there had been an issuance in 2006, the Commissioner would have set up 2006 as the year in which the income was realized, but that was not the law of Virginia when these transactions took place.  Thank you, Your Honor. Mr. Jacobs? With respect to the disguise sale issue, I think it was mentioned that the Government's Counsel mentioned substance of reform, and I'll say this, this is absolutely about economic substance, and I would ask this Court to look at the economic substance of this transaction, because it's not a transitory sale of tax credits. Virginia Conservation got a number of rights. It got a full capital account, and it's still in this partnership. It can only be bought out at fair market value. And I would also look at the Government's brief, page 38. This Court's focus, and I'm reading, this Court's focus on the entrepreneurial risk, and this Court's reference to Virginia Historic, on the entrepreneurial risk of the partnership operations in Virginia Historic, highlights the distinction between a partner's equity contribution to a partnership on the one hand, and a transfer of funds by a partner to a partnership as payment of the sales price of partnership property on the other. This case is under the first clause. Virginia Historic is under the second clause. This is all about an equity contribution in this case. And I would also say on page 38, the Government cites to the Historic Boardwalk case, which I mentioned in the opening argument, which is a Third Circuit case, that is a bona fide partner case. So they say that there's no challenge to the valid partnership, and that the regulations say you can't look to that. What this Court did in Virginia Historic, is it said we're going to decide the case under the Sky Sale Principles, and those regulations, before we get to the valid partnership issue. That wasn't even a valid partnership. It's transitory. Completely transitory, as this Court recognized. Yeah, but as counsel pointed out, the Court in Virginia Historic assumed it was valid. That is correct. But in this case, the Government has conceded that this is a bona fide partnership. And I would say, if you look at the Well, if the Court assumed it in Virginia Historic, how does that help you? Well, I think, again, it's the statute. It's looking at this. And it's several different levels. It's not just the Section 707. It's the transfer of property, and it's also the entrepreneurial risk issue. If I could move on to the timing issue, I think Judge Winn had asked about whether Virginia could have disallowed the credits. Well, I would put this out here. The Virginia rules actually follow the IRS rules. It incorporates the IRS rules. The IRS, in this very case, made an adjustment of $7 million to the valuation. And the Virginia Department of Taxation could have very easily tacked onto that because they can pay you back. And they could even do it today. There's real risk there. That is an ongoing risk. In terms of entrepreneurial risk, this partnership had $24 million in debt. And although Mr. Humiston and Mr. Carr guaranteed this credit indemnity, all of their fortunes were in this partnership. That is the definition of entrepreneurial risk. In terms of ministerial, we provided a definition in our reply brief that's based on what the IRS said is ministerial. And that involves the exercise of discretion and judgment. I don't think there's any question here that what the Virginia Department of Taxation was doing in the early part of the year in 2006, took them two months, finally got it done in March of that year. It was done by the highest official in that particular unit. That is not ministerial. Virginia could very well have done what you said, which is made adjustments. They had the full appraisal in front of them, which they require. They require the deeds of donation, and there are specific reasons for that. Because, again, the IRS rules apply, and there's a checklist of about 20 or 30 things that you have to go through. Any of those things can happen. And that's why the parties put the escrow conditions into the agreements. Because even regardless of what the government thinks is ministerial, the parties thought it was not ministerial. They didn't think that process was ministerial at all. And I think you can look at the record in this case, discussions in January going forward. What the government is trying to do on the issue that Judge Hamilton raised is to confuse the state law issues with the federal law issues. And, again, the regulation says it's federal tax law principles that apply. What they're looking at is when was it effective for state tax principles on these forms. That's not the analysis. I would also point out in one of the rulings, and this is at JA 943-944, in order for the transfer of a credit to be valid, the taxpayer transferring the credit must file a notification of the transfer with the department in accordance with the procedures and forms required by the tax mission. Not valid if you don't file it, and you're not valid until you get the credit acknowledge letters. The government also talked about this December 30th date, but I would ask the court to look at the stipulations in this case, and it's JA 654-655. The government stipulated that those were drafts. You can't transfer anything with a draft, at least not in my knowledge. Thank you, Your Honor. Thank you very much. I will come down and greet counsel, and Judge Hamilton will send his best wishes via television, and then we'll move on to our next case.
judges: G. Steven Agee, James A. Wynn, Jr., Clyde H. Hamilton